**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America, | Case No.: 2:10-cr-00430-JAD-GWF |
| Plaintiff/respondent | **Order Denying Motion to Vacate Sentence** |
| v. | [ECF Nos. 173, 178] |
| Lomando Mark Scott, | |
| Defendant/petitioner | |

Lomando Mark Scott was convicted in 2013 of possession of a controlled substance with intent to distribute, being a felon in possession of a firearm, and possessing a firearm during and in relation to a drug-trafficking crime.[1] He received a 421-month sentence, which he now moves to vacate under 28 U.S.C. § 2255. Scott raises nine grounds for relief, each contending that his trial and appellate counsel were constitutionally ineffective. Because Scott has failed to show either that his counsel committed any error or that he was prejudiced by the alleged error, I deny his motion and deny him a certificate of appealability.

**Background**

In 2010, a constable arrived at a house Scott was renting in North Las Vegas, Nevada to evict him.[2] The constable informed Scott that he had an hour to gather his belongings and to vacate the premises.[3] Scott began placing his belongings in his car parked outside.[4] After entering the home, the constable smelled marijuana and saw Scott place stacks of cash in his

---

[1] ECF No. 155.

[2] ECF No. 43 at 1.

[3] *Id*.

[4] *Id*. at 2.

pockets.[5]  The constable called the North Las Vegas Police Department to help him secure the house.[6]  The officers who arrived on scene ran Scott's background and discovered that he had several felony convictions and had failed to update his address, as required under Nevada law.[7]  The officers then arrested Scott and, upon searching the house, discovered drug paraphernalia and several grams of cocaine.[8]  The lead investigator decided to impound Scott's car and ordered an inventory search, which revealed a pillowcase containing a handgun and over 200 grams of cocaine.[9]

After Scott was indicted, he moved to suppress only the evidence found in his car.[10]  A magistrate judge issued a report and recommendation granting the motion, which District Judge Phillip M. Pro adopted.[11]  The government appealed, and the Ninth Circuit reversed, holding that the warrantless search was permissible under the automobile exception.[12]  The case was remanded and proceeded to trial, and a jury found Scott guilty on four of the five counts.[13]  He received a total sentence of 421 months of imprisonment, and the Ninth Circuit affirmed the conviction and sentence.[14]  I inherited this case when Judge Pro retired.[15]

---

[5] *Id.*

[6] *Id.*

[7] *Id.*; Nev. Rev. Stat. § 179C.110.

[8] ECF No. 43 at 2–3.

[9] *Id.* at 3.

[10] ECF No. 17.

[11] ECF Nos. 43, 50.

[12] *United States v. Scott*, 705 F.3d 410, 416–17 (9th Cir. 2012).

[13] ECF No. 137.

[14] *United States v. Scott*, 603 F. App'x 573 (9th Cir. 2015).

[15] ECF No. 171.

**Discussion**

To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and prejudice.[16] The court "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance," and a defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."[17] "[T]he standard for judging counsel's representation is a most deferential one" because "the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge."[18] "A reasonable tactical choice based on an adequate inquiry is immune from attack."[19]

Scott raises a litany of issues in his nine grounds for relief, many of which are redundant. From his briefing, I divine six ways that he asserts his counsel performed ineffectively: (1) failing to challenge the additional drugs charged under count 1 of the superseding indictment; (2) failing to challenge the search of his rental house; (3) failing to call an additional witness in challenging the search of his car; (4) failing to cite *Johnson v. United States*, 135 S. Ct. 2551 (2015), in his petition for a writ of certiorari; (5) failing to seek severance of count 5; and (6) failing to inform him of a plea offer from the government and misinforming him of the potential sentence he faced if he proceeded to trial.[20]

---

[16] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[17] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotation marks and citations omitted).

[18] *Id*. at 105.

[19] *Gerlaugh v. Stewart*, 129 F.3d 1027, 1033 (9th Cir. 1997); *see also United States v. Quintero–Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1996).

[20] Scott has moved to amend his original motion as to the first two arguments. ECF No. 178. He includes a handwritten brief that is largely identical to the relevant portions of his original

**I.     Grounds 1 & 3: additional drugs charged under count 1**

Scott argues that his attorneys failed to challenge count 1 of the superseding indictment, which he contends improperly combined the quantity of cocaine found in the house with the cocaine found in his car.[21]  He briefly cites to Federal Rule of Criminal Procedure 8(a), which governs the joinder of offenses in an indictment.[22]  But Rule 8 addresses charging a defendant with multiple, *separate* counts, mandating that the charges be "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[23]  The rule says nothing about combining the underlying facts into a single count—in this case, possession of a controlled substance with intent to distribute.  And the specific section of the Controlled Substances Act that Scott was charged with violating required the government to prove only that he possessed (with intent to distribute) "28 grams or more of a mixture or substance" that contained cocaine base.[24]  Accordingly, Scott has not demonstrated any legal relevance to whether the indictment alleged that he possessed 208 grams or 215 grams of cocaine base and has therefore failed to establish ineffective performance or prejudice.

**II.     Grounds 2, 4, & 6: search of Scott's rental house**

Next, Scott argues that his attorneys should have moved to suppress the warrantless search of the rental house.[25]  But to invoke the Fourth Amendment's protection against

---

motion, and any original content does not remedy the defects I address herein.  I therefore deny his motion to amend.

[21] ECF No. 173 at 5–7; ECF No. 173-1 at 3, 21; *see also* ECF No. 107 (superseding indictment).

[22] ECF No. 173-1 at 5.

[23] Fed. R. Crim. P. 8(a).

[24] 28 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii).

[25] ECF No. 173 at 6–8.

4

unreasonable searches, Scott must have had a "legitimate expectation of privacy" in the house.[26]

Responding to the government's discovery request, Scott's lead trial counsel explained that he

concluded before trial that Scott lacked a legitimate expectation of privacy because he was being

evicted from the house.[27]  The attorney's conclusion was justified, as it is well established that

"individuals who occupy a piece of property unlawfully have no claim under the Fourth

Amendment."[28]  Indeed, in a case remarkably similar to this one, the Seventh Circuit concluded

that an individual presented with an eviction order is stripped of his legitimate expectation of

privacy.[29]  The decision by Scott's attorneys not to challenge this search at trial or on appeal was

therefore reasonable and did not prejudice him.

**III.     Ground 5: search of Scott's car**

Scott also challenges the search of his car, asserting that his counsel failed to challenge

the fact that, during the suppression hearing, the government did not call as a witness the

locksmith who accompanied the constable during the eviction.[30]  Scott refers to the locksmith as

a "key government witness" and asserts that the government committed a *Brady* violation,[31] but

Scott offers no hint about what the locksmith could have testified to or what exculpatory

---

[26] *United States v. Schram*, 901 F.3d 1042, 1044 (9th Cir. 2018) (quoting *California v. Greenwood*, 486 U.S. 35, 39 (1988)).

[27] ECF No. 197-1 at 2.

[28] *Schram*, 901 F.3d at 1045 (quoting *United States v. Curlin*, 638 F.3d 562, 565–66 (7th Cir. 2011)).

[29] *Curlin*, 638 F.3d at 565–66 (citing cases); *see also Schram*, 901 F.3d at 1046 (citing *Curlin* and ultimately concluding that,"[l]ike a burglar, trespasser, or squatter, an individual violating a court no-contact order is on property that the law prevents him from entering" and therefore "lacks a legitimate expectation of privacy in that place").

[30] ECF No. 173-1 at 32.

[31] *Id*.

5

information he possessed.[32] I see no possible relevance of the locksmith's testimony to the

search of Scott's car, especially when Scott conceded on appeal that the police had probable

cause to believe the car contained evidence of a crime—i.e., drugs.[33]

**IV.     Ground 7: *Johnson v. United States***

Scott next argues that he was denied effective appellate counsel because his attorneys did

not cite *Johnson v. United States* in the section of his petition for certiorari challenging his

§ 924(c) conviction.[34] In *Johnson*, the U.S. Supreme Court held that the so-called "residual

clause" of the Armed Career Criminal Act is void for vagueness.[35] This decision led to

constitutional challenges to § 924(c), which penalizes the use of a firearm during a "crime of

violence"—a term the statute defines using a materially similar residual clause.[36] But Scott was

convicted of a different provision of § 924(c), which describes an additional penalty for the use

of a firearm during a "drug trafficking crime." The statute provides a separate definition for this

latter term that does *not* incorporate a residual clause.[37] *Johnson* thus has no bearing on Scott's

---

[32] *See United States v. Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001) ("To prevail on a *Brady* claim, the defendant must show that '(1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced; and (3) the suppressed evidence was material to his guilt or punishment.'").

[33] *Scott*, 705 F.3d at 417 ("Scott has accepted the magistrate judge's finding that 'law enforcement had probable cause to believe his vehicle may have contained evidence of a crime,' a finding that, on this record, has ample support.").

[34] Scott acknowledges that the Supreme Court decided *Johnson* more than a week after he filed his cert petition, ECF No. 173 at 9, so I interpret his claim to assert that his counsel should have filed an amended petition or a notice of supplemental authority.

[35] *Johnson v. United States*, 135 S. Ct. 2551 (2015).

[36] 28 U.S.C. §§ 924(c)(1)(A), (c)(3).

[37] *Id*. § 924(c)(2) ("For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.").

§ 924(c) conviction, so his appellate counsel did not err by not raising the case in his cert petition.

## V.  Ground 8: severance of count 5

Scott additionally challenges the fact that his attorneys did not seek to sever count 5 of the superseding indictment, a controlled-substance charge that stems from an incident that occurred more than a year before the search.[38]  Scott's former lead trial counsel asserts in his discovery response that he should have moved to sever the count, claiming that his failure to do so was an oversight.[39]  The government counters that this charge was properly joined.  But I need not address this question because Scott did not suffer prejudice: his sentence for count 5 (combined with count 1) ran concurrent to his felon-in-possession sentence under count 3.[40]

## VI.  Ground 9: plea offer and length of potential sentence

Finally, Scott contends that his trial counsel failed to inform him of a written government plea offer and incorrectly advised him that the maximum sentence that he could receive, if he lost at trial, was 15 years.[41]  He appears to claim that he would have taken a plea offer if he had known that he potentially faced a 421-month sentence.[42]

If Scott had substantiated his allegations, he might have pled a viable claim for ineffective assistance of counsel.[43]  But Scott never elaborates on the details of the purported

---

[38] ECF No. 173 at 9–10.

[39] ECF No. 197-1 at 3.

[40] ECF No. 155 at 3.

[41] ECF No. 173-1.

[42] ECF No. 172 at 11.

[43] *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."); *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003) (finding ineffective assistance of counsel where the defendant turned down the government's

1 offer or how he learned of it (given that his counsel allegedly failed to present it to him). In

2 contrast, Scott's former counsel avers that he informed Scott of the government's sole offer,

3 which appears to have consisted of a 25-year sentence.[44] The attorney further asserts that he

4 advised Scott of the possible extent of his sentence but that Scott nonetheless chose to proceed to

5 trial because he "felt he would die in prison if he accepted 25 years without a protest."[45]

6      Although I would typically conduct an evidentiary hearing to weigh conflicting narratives

7 between a defendant and his former attorney, I find no basis for crediting Scott's version of

8 events.[46] He has made only vague allegations and, critically, has failed to address—let alone

9 refute—his former attorney's representations.[47] I therefore find that Scott has not met his burden

10 to show that his attorney withheld a plea offer by the government. And because Scott considered

11 and rejected a 25-year sentence, I find it facially implausible that his attorney informed him that

12 he faced a *maximum* sentence of 15 years—10 years *less* than he would have served under the

13 plea agreement. The record thus conclusively shows that Scott is entitled to no relief.

14

15

16

17

---

18 plea offer based on misinformation from his attorney); *Magana v. Hofbauer*, 263 F.3d 542, 553
(6th Cir. 2001) (finding ineffective assistance of counsel where the attorney misadvised the
19 defendant on the possible length of his sentence and the defendant demonstrated a reasonable
probability that, but for this error, he would have accepted a plea offer).

20 [44] ECF No. 197-1 at 3 ("The file contains only one written offer of a plea memorandum. That is
consistent with my recollection, that there was never an opportunity to accept an offer that was
21 less than 25 years incarceration.").

22 [45] *Id*. at 4.

[46] *See* 28 U.S.C. § 2255(b) (requiring a hearing "unless the motion and the files and records of
23 the case conclusively show that the prisoner is entitled to no relief").

[47] ECF No. 200 at 10–11 (reply to government's opposition).

**VII.    Certificate of appealability**

To appeal this order, Scott needs a certificate of appealability from a circuit or district judge.[48]  In deciding whether to grant one, I consider if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[49] Although this standard is "lenient,"[50] I find that Scott's claims are devoid of merit and therefore deny the certificate.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Scott's motion to vacate his sentence under 28 U.S.C. § 2255 **[ECF No. 173] is DENIED.**

IT IS FURTHER ORDERED that Scott's motion to amend his motion to vacate **[ECF No. 178] is DENIED.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

Dated: October 9, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[48] 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1).

[49] *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quotation marks omitted).

[50] *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc).